# HILL *v.* MERCHANTS' MUTUAL INSURANCE COMPANY.

### ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 215.   Submitted March 19, 1890. — Decided March 31, 1890.

A state statute which confers upon a judgment creditor of a corporation, when execution on a judgment against the corporation is returned unsatisfied, the power to summon in a stockholder who has not fully paid the subscription to his stock, and obtain judgment and execution against him for the amount so unpaid, in no way increases the liability of the stockholder to pay that amount; and, inasmuch as he was before then liable to an action at law by the corporation to recover from him such unpaid amount at law, as well as to a suit in equity, in common with other similar stockholders, to compel contribution for the benefit of creditors, no substantial right of the stockholder is violated.

THE court, in its opinion, stated the case as follows:

This writ of error brings up for reëxamination a judgment of the Supreme Court of Missouri, and presents the question whether a certain statute to which that judgment gave effect, impaired the obligation of a contract arising out of a subscription by Britton A. Hill to the stock of an insurance company created by the laws of Missouri.

By the second section of an act of the Missouri legislature, approved March 3, 1857, creating the Washington Insurance Company, it was provided in reference to subscriptions to its stock, that, "at the time of subscribing there shall be paid on each share one dollar, and nine dollars more within twenty days after the first election of directors; if any stockholder fails to make such payment, such stockholder shall forfeit the amount paid on such stock at the time of subscribing; the balance due on each share shall be subject to the call of the directors, and the said company shall not be authorized to make any policy or contract of insurance until the whole amount of shares subscribed shall be actually paid in, or secured to be paid on demand by approved notes or mortgages on real estate." The same act contained the following provisions: "This act shall be, and the same is hereby declared, a public act, and the same shall be deemed and construed as such; and the corporation established by this act shall be, and the same is hereby exempted from the operation of sections seven, thirteen, fourteen, fifteen, sixteen and eighteen of article first of the act entitled 'An act concerning corporations,' approved November 23, 1855; and said sections shall be deemed as repealed, so far as the same concern the corporation hereby established." Laws of Missouri, 1856–7, pp. 544, 545, §§ 2, 8.

Sections seven, thirteen, fourteen, fifteen, sixteen and eighteen of the above act of 1855, from the operation of which the Washington Insurance Company was thus exempted, are as follows:

"§ 7. The charter of every corporation that shall hereafter be granted by the legislature shall be subject to alteration, suspension and repeal in the discretion of the legislature."

"§ 13. In all corporations hereafter created by the legislature, unless otherwise specified in their charter, in case of deficiency of corporate property, or estate liable to execution, the individual property, rights and credits of every member of the copartnership, or body politic, having a share or shares therein, shall be liable to be taken on execution, to an additional amount, equal to that of the amount of his stock, and no more, for all debts of the corporation contracted during his ownership of such stock; and such liability shall continue, notwithstanding any subsequent transfer of such stock, for the term of one year after the record of the transfer thereof on the books of the corporation, and for the term of six months after judgment recovered against such corporation, in any suit commenced within the year aforesaid: *Provided,* That in every such case the officer holding the execution shall first ascertain and certify upon such execution that he cannot find corporate property or estate.

"§ 14. In such case, the officer may cause the property of such stockholder to be levied upon by execution in the same manner as if the same were against him individually, after giving him forty-eight hours' previous notice of his intention, and the amount of the debt or deficiency, if he resides within the county, or if not within the county, to his agent, if he have any within the county, otherwise to the clerk or cashier or some other officer of the corporation, unless such stockholder, his agent, or the clerk or other officer, on demand and notice as aforesaid, shall disclose and show to the execution creditor, or the said officer, corporate property or estate subject to execution sufficient to satisfy said execution and all fees.

"§ 15. Such creditor, after demand and notice as mentioned in the preceding section, at his election, may have an action against any such stockholder or stockholders, on whom such demand and notice may have been served, jointly or severally, or so many of them as he may elect, to recover of him, or them, individually, the amount of his execution and costs, or of the deficiency as aforesaid, not exceeding the amount of the stock held by such stockholder or stockholders.

"§ 16. The clerk, or other officer having charge of the

books of any corporation, on demand of any officer holding any execution against the same, shall furnish the officer with the names, places of residence (so far as to him known) and the amount of liability of every person liable as aforesaid."

"§ 18. Every corporation hereafter created shall give notice annually in some newspaper printed in the county where the corporation is established, and in case no paper is printed therein, then in the nearest paper, of the amount of all the existing debts of the corporation, which notice shall be signed by the president and a majority of the directors; and if any of the said corporators shall fail so to do, all the stockholders of the corporation shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such notice shall be given." Rev. Stat. Missouri 1865, pp. 372–3.

By an act of the legislature of Missouri, approved February 9, ˜59, the Excelsior Insurance Company was created. That act is as follows:

"§ 1. That an insurance company be, and is hereby, established in the city of St. Louis, to be known by the name and style of the 'Excelsior Insurance Company,' the stockholders of which are hereby declared a body corporate and politic, with the same amount of capital stock and period of existence, and the same rights, privileges and restrictions, as were conferred upon the 'Washington Insurance Company' of St. Louis, by an act of the General Assembly of the State of Missouri, approved March the third, eighteen hundred and fifty-seven, with the exception of so much of section eight of said act, as declares the same a public act, and exempts said corporation from the operation of section eighteen of article first of the act, entitled 'An act concerning Corporations,' approved November the twenty-third, eighteen hundred and fifty-five.

"§ 2. James H. Lucas, Henry L. Patterson, Thomas Stein, Morris Collins, James G. Brown and John C. Porter, or any three of them, or such person or persons as they may appoint, are hereby constituted commissioners to open books for subscription to the capital stock, in the same manner as is prescribed in the charter of said Washington Insurance Company.

This act to take effect from and after its passage." Sess. Acts Missouri, 1859, p. 74.

Section 6, article 8 of the constitution of Missouri, which went into effect in 1865, provides as follows: "Dues from private corporations shall be secured by such means as may be prescribed by law; but in all cases each stockholder shall be individually liable, over and above the stock by him or her owned, and any amount unpaid thereon, in a further sum at least equal in amount to such stock."

In order to give effect to this constitutional provision, the legislature, by an act which went into effect March 19, 1866, amended section 13 of the above act of 1855, so as to read as follows:

"§ 11. If any execution shall have been issued against the property or effects of a corporation, and if there cannot be found whereon to levy such execution, then such execution may be issued against any of the stockholders to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon : *Provided always*, that no execution shall issue against any stockholder except upon an order of the court in which the action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after sufficient notice in writing to the persons sought to be charged; and upon such motion, such court may order execution to issue accordingly." Rev. Stat. Missouri, 1866, 328.

In July, 1866, Hill subscribed for 64 shares, of the par value of $100 for each share, of the stock of the Excelsior Insurance Company, paying part cash and giving to the company four notes for $750 each, dated respectively July 20, 1866, and one note dated July 11, 1866, for $1800. Each one of these notes was payable on demand to the order of the insurance company. At the commencement of these proceedings his stock had become reduced to 37 shares.

The constitution of Missouri of 1875 provided that "dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable in any amount over or above the amount of stock owned by him or her." Art. 12, § 9.

In 1879 the statutes of Missouri were revised, and the above section of the act of 1866 was amended so as to read as follows:

"§ 736. If any execution shall have been issued against any corporation, and there cannot be found any property or effects whereon to levy the same then such execution may be issued against any of the stockholders to the extent of the amount of the unpaid balance of such stock by him or her owned: *Provided, always,* That no execution shall issue against any stockholder, except upon an order of the court in which the action, suit or other proceedings shall have been brought or instituted, made upon motion in open court, after sufficient notice in writing to the persons sought to be charged; and upon such motion, such court may order execution to issue accordingly: *And provided further,* That no stockholder shall be individually liable in any amount over and above the amount of stock owned."

The present action was brought under the statute last quoted. It was commenced by notice to Hill on behalf of the Merchants' Mutual Insurance Company that it would move the Circuit Court of the city of St. Louis for execution against him, as a stockholder of the Excelsior Insurance Company, for the balance unpaid upon his thirty-seven shares of the capital stock of the Excelsior Insurance Company. The proceeding was docketed as a suit against that company by the Merchants' Insurance Company. Hill appeared, and upon the trial of the action the court found that the unpaid balance on said shares was $2127.50. For that amount, with costs, an execution was directed to be issued against Hill. Upon appeal to the St. Louis Court of Appeals that judgment was affirmed, and the judgment of the Court of Appeals was affirmed by the Supreme Court of the State. 12 Missouri App. 148; 86 Missouri, 466.

*Mr. G. M. Stewart* for plaintiff in error.

Under the law as it stood when plaintiff in error subscribed for his stock, a creditor of the Excelsior Insurance Co., if there was an insufficiency of corporate property, had no action

at law against a stockholder. His remedy was in equity in behalf of himself and other creditors who might join him. In such case the stockholder or stockholders so impleaded would have had the right by answer, or cross-bill or both to have all the other stockholders who were subject to assessments brought into court and their respective liabilities determined, because in the case at bar, when and long before this process was issued the Excelsior Insurance Company was in liquidation.

In *Fairchild* v. *Hunt*, 71 Missouri, 526, it was expressly decided, in reference to these very sections of the Revised Statutes of 1855, 1865 and 1879, that when a revision includes a previous law, it is only thereby intended to continue it in force, and not to make it operate as an original act to take effect from the date of the revised law, and that § 11, of the act of 1865, could not retroact so as to affect Mrs. Hunt, a stockholder under a charter of 1853.

This fact is apparently conceded, but it has been argued by counsel and by the courts below, that it is harmless inasmuch as these statutes were only remedial, and did not prejudice the contractual rights of plaintiff in error.

By its charter the Excelsior Insurance Company was exempted from sec. 7, c. 34, Rev. Stat. Mo. 1855, c. 37, which provided that the charter of every corporation which should *thereafter* be granted should be subject to legislative control. The plain meaning of this provision is that no subsequent legislation could affect the charter rights of this corporation. Of these, one was that a stockholder should not be subject to the summary process invoked in this case. Another that when called upon to pay his *pro rata* share of the indebtedness of the company, when in liquidation, the amount he should pay would be determined by the proportion which the total amount of the unpaid stock due from solvent holders bore to the total indebtedness of the company.

In the court below it was argued that by his subscription to the capital stock of the Excelsior Insurance Company, the appellant agreed absolutely to pay the full amount of his subscription, and hence he cannot complain that he has been forced to pay it by this proceeding.

With all due respect to the lower court, we submit that a subscriber to the capital stock of this corporation did not unconditionally agree to pay the full amount of his subscription, nor is such the inflexible rule of law.

It is true, he becomes liable, under certain contingencies, to pay the same in full, but this is only when the necessities of the corporate business require that each shareholder shall pay the full amount of his subscription.

This is especially true where the enterprise has been abandoned as in the case at bar. In such case there is no use for capital except for winding up the company's business.

If there are no unpaid creditors, the liability of a member of the company to contribute his share of the capital, would, by the implied terms of his contract, have ceased.

If, however, there are debts of the corporation to be paid, then each shareholder agrees to contribute or pay upon his unpaid stock his *pro rata* share of such indebtedness, and, when this is paid, his liability is at an end.

This court has decided that the remedy subsisting when a contract was made, is a part of the obligation, and any subsequent law of the State, which so affects that remedy as substantially to impair or lessen the value of that contract is forbidden by the Constitution of the United States. *Edwards* v. *Kearzy*, 96 U. S. 595; *Seibert* v. *Lewis*, 122 U. S. 284, 294; *Denny* v. *Bennett*, 128 U. S. 489, 494, 495. This court has also held that the remedy provided by the charter of a corporation is the only remedy that can be applied in recovering from a stockholder for his unpaid stock. *Pollard* v. *Bailey*, 20 Wall. 520; *Terry* v. *Tubman*, 92 U. S. 156; *Hornor* v. *Henning*, 93 U. S. 228; *Fourth Nat. Bank* v. *Francklyn*, 120 U. S. 747.

The proceeding in the case at bar was such that plaintiff in error could interpose no pleadings. The only defence possible to him was to show the amount unpaid on his stock, but he could not show that under the contract made when he subscribed for the stock he was only liable for his *pro rata* share. In other words, he was denied the right to show the total indebtedness of the company, or the amount of unpaid stock held by solvent stockholders and thus establish the extent of

his liability. He could not even show that there were avail-able corporate assets to pay the debt of defendant in error.

A subsequent act, which impairs rights acquired, or creates new grounds of action, or takes away defences which might be made under existing laws, or imposes new liabilities in respect of past transactions, is unconstitutional. *Hope Mut. Ins. Co.* v. *Flynn,* 38 Missouri, 483; *S. C.* 90 Am. Dec. 438; *Provident Savings Inst.* v. *Bathing Rink,* 52 Missouri, 557; *Fairchild* v. *Hunt,* 71 Missouri, 526, 531; *Woart* v. *Winnick,* 3 N. H. 473, 477; *Society for Propagation of Gospel* v. *Wheeler,* 2 Gallison, 105.

At common law no action would lie by a creditor of the corporation against a stockholder, because there was no privity of contract between them, though in equity he could have a bill against all or some of the stockholders of an insolvent corporation, upon an equity worked out through the liability of the corporation to him and of the stockholders to the corporation for a balance of unpaid stock, by a species of subrogation, to compel them to contribute their *pro rata* shares (within the amounts owed by them) towards making up the amount of the creditor's demand against the corporation; in which an account could be taken, and claims of set-off and other equitable defences could be adjusted, and an apportionment made of the common burden among all the defendants. *Lionberger* v. *Broadway Savings Bank,* 10 Missouri App. 499; *Vose* v. *Grant,* 15 Mass. 505; *Spear* v. *Grant,* 16 Mass. 915; *Wood* v. *Dummer,* 3 Mason, 308; *Briggs* v. *Penniman,* 8 Cowen, 387; *S. C.* 18 Am. Dec. 454; *Nathan* v. *Whitlock,* 9 Paige, 152; *Mann* v. *Pentz,* 3 N. Y. (3 Comst.) 415, 422.

The case of *Hatch* v. *Dana,* 101 U. S. 205, does not militate against this position. In that case a bill in equity was brought to enforce a demand against an insolvent corporation, against several but not all of the stockholders, and in answer to a complaint made, on appeal, that all should be joined, this court said that this was not necessary, inasmuch as those stockholders who were impleaded could secure the necessary protection by applying for a receiver, or by filing a cross-bill they might have obtained a discovery of the other stock-

holders, brought them in and enforced contribution from all who had not paid their stock subscription. In the proceeding invoked in the case at bar, plaintiff in error was deprived of all these rights, and it is that of which we complain and which we insist was guaranteed to him by the charter of his corporation, and of which he could not be legally deprived by subsequent legislation.

  *Mr. Everett W. Pattison* for defendant in error.

Mr. Justice HARLAN delivered the opinion of the court.

The plaintiff in error contends that the act creating the Excelsior Insurance Company was a private act, and its charter exempted from alteration, suspension or repeal by subsequent legislation; that its stockholders were exempted from the levy of an execution upon their individual property at the instance of a judgment creditor of the corporation in case of a deficiency of corporate property, and from actions at law by creditors; that the rights of its stockholders were not affected by subsequent legislation of a general nature; and that the method of collecting unpaid stock, specially provided for in the company's charter, was exclusive of any other remedy, except that supplied by a court of equity.

The assignment of error which gives this court jurisdiction to reëxamine the judgment of the state court is, that when the testator of the plaintiff in error purchased the stock of the Excelsior Insurance Company he entered into a contractual relation, not only with the company, but with the State, both as to the method of paying for his stock, and in respect to the extent of his liability; and that the rights vested in him by the contract were taken away, and, therefore, the obligations of his contract were impaired, by the legislation of 1879, the validity of which was sustained by the court below.

We assume, in conformity with the decision of the Supreme Court of Missouri — and that view is favorable to the plaintiff in error — that the Excelsior Insurance Company was not subject to the seventh section of the general statute of November 23, 1855, declaring that the charters of all corporations there-

after created should be granted subject to alteration, suspension and repeal in the discretion of the legislature; and that the other sections of that statute, specially named in the charter of the insurance company, were to stand as repealed so far as that company was concerned. The result of this construction of the charter of the insurance company is, that prior to the passage of the act of 1866, which took effect March 19, 1866, no specific remedy was prescribed for creditors seeking to reach the unpaid subscriptions of stockholders. But it was open to them to proceed by a suit in equity. That such a remedy could be used without violating any provision of the company's charter, or any right of a stockholder, cannot be doubted. But neither the company nor its stockholders had any vested right in that particular remedy. They could only insist that the extent of their liability should not be increased. The act of 1866 authorized an execution to be issued against a stockholder " to an extent equal in amount to the amount of stock by him or her owned together with any amount unpaid thereon," where no property or effects of the corporation could be found. This statute, if given a retrospective operation, certainly did increase the liability of those who became stockholders in the Excelsior Insurance Company prior to its passage. But the defendant in error contends that it was applicable to all who, like Hill, became stockholders after its passage. Waiving any consideration of this question it is certain that the act of 1879, under which this action was instituted, did not increase Hill's liability. He was liable, by virtue of his original subscription and by his notes to the company, to pay the whole amount of his subscription. The statute of 1879 did not enlarge this liability, for it authorized an execution against a stockholder, where there was no corporate property to be levied on, only " to the extent of the amount of the unpaid balance of such stock by him or her owned." While, under the original charter of the company, he was liable to a suit in equity, under the statute of 1879 he was liable to be proceeded against by notice and motion in the action in which judgment was rendered against the corporation. In either mode he had opportunity to make defence.

It is, however, contended that under the charter of the company the stockholder was not bound to pay any amount beyond ten dollars on each share except upon a call of the directors, and that the provision allowing an execution for the unpaid balance, pursuant to the judgment of the court, was a change of the contract. The provision in the company's charter, that "the balance due on each share shall be subject to the call of the directors," did not give the stockholder the right, as between himself and the company, or as between him and the company's creditors, to withhold payment of the balance due from him until the necessities of the company required payment in full for the shares subscribed. The company was forbidden to make any policy or contract of insurance "until the whole amount of shares subscribed shall be actually paid in, or secured to be paid on demand, by approved notes or mortgages on real estate." Hence Hill executed demand notes, with surety, for the entire balance due on his original subscription. The authority of the company to call for the payment of those notes, by instalments, did not give him a right, as a part of his contract, to make payment in that particular mode. His undertaking was to pay each and all of his notes on demand, and it was entirely competent for the legislature, as a regulation of the business and affairs of the company, to give its creditors a new or additional remedy by which this undertaking could be enforced in their behalf — such remedy not increasing the debtor's liability. As said by this court in *Chicago Life Ins. Co.* v. *Needles*, 113 U. S. 574, 580, the condition is implied in every grant of corporate existence that "the corporation shall be subject to such reasonable regulations, in respect to the general conduct of its affairs, as the legislature may, from time to time, prescribe, which do not materially interfere with or obstruct the substantial enjoyment of the privileges the State has granted, and serve only to secure the ends for which the corporation was created."

Upon the point made by the plaintiff in error, that under the original charter of the company Hill was liable only to a suit in equity, to which all the stockholders could be made parties, and in which he could compel contribution from other

stockholders, whereas under the statute of 1879 he could be proceeded against alone, it is sufficient to say that if neither the statute of 1866 nor that of 1879 had been passed, he could have been sued at law upon the notes he gave the company. The proceeding authorized by the statute of 1879 is, in effect, a suit upon his notes for the amount due thereon. His liability to pay that amount has no such connection with the liability of other stockholders as to exempt him from a suit at law to compel him to pay the sum he agreed to pay. *Hatch* v. *Dana,* 101 U. S. 205. The statute restricts any judgment against him to the amount he originally assumed to pay. Consequently, no substantial right of his has been violated. "Whatever belongs merely to the remedy may be altered according to the will of the State, provided the alteration does not impair the obligation of the contract." *Bronson* v. *Kinzie,* 1 How. 311, 316; *Sturges* v. *Crowninshield,* 4 Wheat. 122, 200; *Fourth National Bank* v. *Francklyn,* 120 U. S. 747, 755, and cases there cited.

*Judgment affirmed.*