## HENLEY v. MYERS, RECEIVER OF CONSOLIDATED BARB WIRE COMPANY.

### ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 72.   Submitted December 10, 1909.—Decided January 3, 1910.

The State creating a corporation may determine how transfers of its stock shall be made and evidenced, and a change in the law imposing no restraint upon the transfer, but only affecting the method of procedure, does not impair the obligation of the charter contract within the meaning of the contract clause of the Federal Constitution; and so held that the corporation law of Kansas of 1899 is not. void as to stockholders who purchased stock prior thereto and sold it thereafter, because it required a statement of the transfer of stock to be filed in the office of the Secretary of State in order to relieve the transferor of stockholder's liability, the act not depriving him of any defense that might be made at the time the stock was acquired.

Methods of procedure in actions on contract that do not affect substantial rights of parties are within the control of the State, and the obligation of a stockholder's contract is not impaired within the meaning of the contract clause of the Federal Constitution by substituting for individual actions for statutory liability a suit in equity by the receiver of the insolvent corporation; and so held as to the corporation law of Kansas of 1899 amending prior laws to that effect.

In becoming a stockholder of a corporation one does not acquire as against the State a vested right in any particular mode of procedure for enforcement of liability, but it is assumed that parties make their contracts with reference to the existence of the power in the State to regulate such procedure.

THE facts are stated in the opinion.

*Mr. W. W. Nevison, Mr. George J. Barker, Mr. A. C. Mitchell* and *Mr. S. D. Bishop* for plaintiffs in error:

The liability of stockholders for an additional amount

equal to the stock owned by them, although statutory, is contractual in its nature, and therefore within the protection of Art. I, § 10, of the Federal Constitution. *Whitman* v. *Oxford National Bank,* 176 U. S. 559; *Woodworth* v. *Bowles,* 61 Kansas, 569. And see also *Howell* v. *Manglesdorf,* 33 Kansas, 194, 199; *Cooper* v. *Ives,* 62 Kansas, 395, 401; *Pine* v. *Bank,* 63 Kansas, 462, 469; *Stocker* v. *Davidson,* 74 Kansas, 214, 215; *Anglo-American Co.* v. *Lombard,* 132 Fed. Rep. 721, 729.

So much of § 12, ch. 10, Laws of Kansas, 1898, as provides that no transfer of stock in a corporation shall be legal and binding until a statement of the change of ownership thereof, made by the president and secretary of such corporation, is filed with the Secretary of State, is retroactive, impairs the obligation of the contracts of those who owned stock at the time of its enactment, and is therefore unconstitutional and void.

As to the valid effect of a transfer of stock see *Van Demark* v. *Barons,* 52 Kansas, 779; *Merrill* v. *Meade,* 6 Kans. App. 620; *Parkinson* v. *Sugar Co.,* 8 Kans. App. 79; *Plumb* v. *Bank,* 48 Kansas, 484; *Bank* v. *Wulfekuhler,* 19 Kansas, 60, 65; *Hentig* v. *James,* 22 Kansas, 326; 10 Cyc. 716; 19 Am. & Eng. Ency. of Law, 881.

It was not within the power of the legislature to alter this right and effect of transfer. *Edwards* v. *Kearzey,* 96 U. S. 595; 3 Thompson on Corp. § 2183; *Hope Ins. Co.* v. *Flynn,* 38 Missouri, 483; *Dartmouth College Case,* 4 Wheat. 518; *Walker* v. *Whitehead,* 16 Wall. 314; *Goodale* v. *Fennell,* 27 Ohio St. 426; *Intiso* v. *Loan Assn.,* 68 N. J. L. 588.

The portions of §§ 14 and 15 of ch. 10, Laws of Kansas, 1898, which substituted for individual actions against the stockholders of corporations upon their stockholders' liability, a suit in equity by a receiver to be appointed after a judgment against the corporation, are retroactive, impair the obligation of the contracts of not only the creditors, but the stockholders of a corporation, and are therefore unconstitutional

and void. *United States* v. *Quincy*, 4 Wall. 535, 550; *Kendall* v. *Fader*, 99 Ill. App. 104; aff'd, 199 Illinois, 294; 3 Thompson on Corp., § 3035; *Evans* v. *Nellis*, 101 Fed. Rep. 920; *Pusey & Jones* v. *Love*, 66 Atl. Rep. 1013; *Harrison* v. *Remington Paper Co.*, 140 Fed. Rep. 385; *Myers* v. *Fruit Co.*, 139 Fed. Rep. 111; *Converse* v. *Ætna Bank*, 79 Connecticut, 163; *Savings Bank* v. *Schranck*, 97 Wisconsin, 250; *Dexler* v. *Edmonds*, 89 Fed. Rep. 467; *Western Bank* v. *New York*, 96 Fed. Rep. 70.

The law of Kansas enacted January 11, 1899, repealing § 32, ch. 23, General Statutes of Kansas of 1868, and §§ 44 and 46 of ch. 23, General Statutes of Kansas of 1868, and enacting §§ 14 and 15 of ch. 10, Laws of 1898, is unconstitutional and void as it impairs the obligations of the contracts of both the creditor and stockholder.

Section 15, ch. 10, Laws of 1898, is unconstitutional and void as it impairs the obligation of the contract of the stockholder by making his additional liability an asset of the corporation and diverting the funds so collected to sources which were not contemplated by § 2, Art. XII, of the constitution of the State.

This court will not reverse its own decisions in order to follow the courts of a State in construing the constitution of that State, and it would have to do so in order to affirm this judgment. *Rowan* v. *Runnels*, 5 How. 134; *Pease* v. *Peck*, 18 How. 595; *Roberts* v. *Bolles*, 101 U. S. 119; *Mohr* v. *Manierre*, 101 U. S. 417; *Butz* v. *Muscatine*, 8 Wall. 575; *Shelby County* v. *Union Bank*, 161 U. S. 149; *M. & O. R. R.* v. *Tennessee*, 153 U. S. 486. See also *Wright* v. *Nagle*, 101 U. S. 791; *Gibson* v. *Lyon*, 115 U. S. 439; *Furman* v. *Nichol*, 8 Wall. 44; *C., B. & Q. R. Co.* v. *Nebraska*, 170 U. S. 57; *New Orleans Waterworks* v. *Sugar Refining Co.*, 125 U. S. 18; *Burgess* v. *Seligman*, 107 U. S. 20; *Stanley County* v. *Coler*, 190 U. S. 437; *Bourbon County* v. *Block*, 99 U. S. 686; *Great Southern Hotel Co.* v. *Jones*, 193 U. S. 544; *Carroll County* v. *Smith*, 111 U. S. 556; *Anderson* v. *Santa Ana*, 116 U. S. 356;

*Bolles* v. *Brimfield*, 120 U. S. 759; *Pleasant Township* v. *Ætna Life Ins. Co.*, 138 U. S. 67; *Barnum* v. *Okolona*, 148 U. S. 393; *Folsom* v. *Township Ninety-Six*, 159 U. S. 611; *Wicomico County* v. *Bancroft*, 203 U. S. 112; *Chicago* v. *Sheldon*, 9 Wall. 55; *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436, 443; *L. & N. R. R. Co.* v. *Palmes*, 109 U. S. 257; *McGahey* v. *Virginia*, 135 U. S. 667; *McCullough* v. *Virginia*, 172 U. S. 109; *Citizens' Savings Bank* v. *Owensboro*, 173 U. S. 637.

The constitutionality of the law of 1899 has been directly before this court in the case of *Evans* v. *Nellis*, 187 U. S. 271. This court, however, did not pass upon the questions here involved, for the reason that it decided that there was no authority conferred by the act of 1899 of Kansas from which the right of the receiver to bring the suit then before the court could be deduced.

The Circuit Court of the United States for the Northern District of New York, in *Evans* v. *Nellis*, 101 Fed. Rep. 920, in an exhaustive opinion, held that the law of 1899 referred to was absolutely unconstitutional, for the reason that it impaired not only the contract of the creditor, but also that of the stockholder. We ask this court to carefully examine this decision and the reasons of the court in arriving at the conclusion set forth in said case.

*Mr. E. E. Myers* and *Mr. R. E. Melvin* for defendant in error:

There is no question of impairment of contract. Defendants were still stockholders when the act of 1898 was passed, and the Kansas constitution also gave the right to amend or repeal corporation laws. Art. XII, § 1, Const. Kansas.

Defendants having entered into a contract by the very terms of which they agreed that the legislature might amend the law relating to their liability and the method of collecting same cannot now, that the legislature did exactly what they contracted it might do, be heard to complain. *Sioux City Ry. Co.* v. *Sioux City*, 138 U. S. 98; *Greenwood* v. *Freight Co.*, 105

U. S. 13; *Miller* v. *State*, 15 Wall. 478; *Union Pac. R. R. Co.* v. *United States*, 99 U. S. 700; *Railroad Co.* v. *Georgia*, 98 U. S. 359; *Railroad Co.* v. *Gaines*, 97 U. S. 697; *Sinking Fund Cases*, 99 U. S. 700; *Water Co.* v. *Clark*, 143 U. S. 1.

There is no increase in liability of stockholders.

Both the legislature and the people have power to change the law in regard to the liability of stockholders without violating any provision of the United States Constitution. *Re Empire City Bank*, 18 N. Y. 199; *Re Oliver Lee & Co.'s Bank*, 21 N. Y. 9; *Re Reciprocity Bank*, 22 N. Y. 9; *Sleeper* v. *Goodwin*, 67 Wisconsin, 577; *S. C.*, 31 N. W. Rep. 335; *Damant Co.* v. *Gray*, 30 Maine, 551; *Ashuelot R. R.* v. *Elliot*, 58 N. H. 451; *Tomlinson* v. *Jessup*, 15 Wall. 454; 2 Beach, Mod. Law of Contracts, § 1648; *State* v. *Railway Co.*, 33 Kansas, 189.

The legislature may give a new and additional remedy for a right already in existence. *Plow Co.* v. *Witham*, 52 Kansas, 185; *Myers* v. *Wheelock*, 60 Kansas, 752; *Phelps* v. *Trust Co.*, 62 Kansas, 529; *Pine* v. *Bank*, 63 Kansas, 468; *West* v. *Bank*, 66 Kansas, 536, 537; *Leavenworth* v. *Water Co.*, 62 Kansas, 643; *Hill* v. *Insurance Co.*, 12 Mo. App. 148; aff'd, 86 Missouri, 466; Cooley's Const. Lim. 361; *Hill* v. *Insurance Co.*, 134 U. S. 515; *Tennessee* v. *Sneed*, 96 U. S. 69; *Bank* v. *Francklyn*, 120 U. S. 747.

*Evans* v. *Nellis*, 101 Fed. Rep. 920, cited and relied on by defendants, was virtually reversed and overturned by this court in *Evans* v. *Nellis*, 187 U. S. 271. This court held in effect that the law in force at the time the judgment was obtained fixed the rights and obligations of the parties and that because the judgment sued on in that action was obtained prior to the passage and taking effect of the 1898 law the receiver had no standing in court to maintain the action; that the action must be brought under the law in force at the time the judgment was obtained. So that 101 Fed. Rep. 920 is virtually wholly *obiter dictum* so far as any discussion of the constitutionality of the act of 1898 is concerned.

Mr. Justice Harlan delivered the opinion of the court.

The Federal question to be disposed of on this writ of error arises under the contract clause of the Constitution. The facts-upon which its decision depends are not in dispute and may be thus summarized:

On the third day of August, 1887, the plaintiffs in error became respectively subscribers to and owners of capital stock in the Consolidated Barb Wire Company, a Kansas corporation, engaged in the business of manufacturing wire. But on January 15, 1899, they sold and transferred their stock, worth par, in good faith, to responsible parties and thereafter had no interest in the company. The fact of such transfer was made to appear on the books of the company. On the same date the company sold all its property and the good will of its business, the proceeds of the sale being distributed among the defendants as stockholders in the proportion of the stock held by each. And on the day last named the company suspended and did not thereafter resume business.

In 1900 W. H. Stevenson obtained a judgment against the company upon which execution was issued and returned "no property found." In 1903 two other judgments—each of which, it is admitted, being based upon a cause of action sounding in tort—were recovered against the company, one by Briggs, administrator, and one by Maxwell. No execution was issued on either of those judgments.

In 1903 Myers, the defendant in error, was appointed receiver of the Wire Company. As such receiver, and by authority of existing statutes, he brought an action in one of the Kansas courts against the present plaintiffs in error as stockholders to recover the amount of the above judgments. Upon final hearing the trial court gave judgments against the defendants, respectively, in certain amounts, to be paid by them in proportion to the stock owned by each. The case was carried to the Supreme Court of Kansas, and the judg-.

ment was affirmed. A rehearing was granted, but the judgment was again affirmed. *Henley* v. *Myers*, 76 Kansas, 736.

At the time the defendants became stockholders in the Wire Company certain constitutional and statutory provisions relating to corporations were in force in Kansas. Those referred to by counsel are given, for convenience, in the margin.[1] From an examination of those provisions it will be

---

[1] "Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder, and such other means as shall be provided by law; but such individual liabilities shall not apply to railroad corporations, nor corporations for religious or charitable purposes." Const. Kansas, Art. 12, § 2.

"If any execution shall have been issued against the property or effects of a corporation, except a railway or a religious or charitable corporation, and there cannot be found any property whereon to levy such execution, then execution may be issued against any of the stockholders, to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; but no execution shall issue against any stockholder, except upon an order of the court in which the action, suit or other proceedings shall have been brought or instituted, made upon motion in open court, after reasonable notice in writing to the person or persons sought to be charged; and, upon such motion, such court may order execution to issue accordingly; or the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment." Gen. Stat. Kans., 1868, c. 23, § 32, p. 198, *Ib.*, 1889, par. 1192.

"A corporation is dissolved, first, by the expiration of the time limited in its charter, second, by a judgment of dissolution rendered by a court of competent jurisdiction; but any such corporation shall be deemed to be dissolved for the purpose of enabling any creditors of such corporation to prosecute suits against the stockholders thereof to enforce their individual liability, if it be shown that such corporation has suspended business for more than one year, or that any corporation now so suspended from business shall for three months after the passage of this act fail to resume its usual and ordinary business." Gen. Stat. Kans., 1868, ch. 23, § 40, as amended by laws 1883, ch. 46, § 1, March 7; *Ib.*, 1889, par. 1200.

"If any corporation, created under this or any general statute of this State, except railway or charitable or religious corporations, be dissolved leaving debts unpaid, suits may be brought against any

seen that when the defendants became the owners of stock
in the company it was the law of Kansas: 1. That a stock-

---

person or persons who were stockholders at the time of such dissolu-
tion, without joining the corporation in such suit; and if judgment
be rendered, and execution satisfied, the defendant or defendants may
sue all who were stockholders at the time of dissolution, for the re-
covery of the portion of such debt for which they were liable, and the
execution upon the judgment shall direct the collection to be made
from property of each stockholder respectively; and if any number
of stockholders (defendants in the case) shall not have property
enough to satisfy his or their portion of the execution, then the amount
of the deficiency shall be divided equally among all the remaining
stockholders, and collections made accordingly, deducting from the
amount a sum in proportion to the amount of stock owned by the
plaintiff at the time the company dissolved." Gen. Stat. Kans., 1868,
ch. 23, § 44, Oct. 31; *Ib.*, 1889, par. 1204.

"No stockholder shall be liable to pay debts of the corporation,
beyond the amount due on his stock, and an additional amount equal
to the stock owned by him." Gen. Stat. Kans., 1868, c. 23, § 46; *Ib.*,
1889, par. 1206.

By a statute passed in 1898, which took effect January 11th, 1899,
the following section took the place of the above § 32:

"If any execution shall have been issued against the property or
effects of a corporation, except a railway or a religious or charitable
corporation, and there cannot be found any property upon which to
levy such execution, such corporation shall be deemed to be insolvent;
and upon application to the court from which said execution was
issued, or to the judge thereof, a receiver shall be appointed, to close
up the affairs of said corporation. Such receiver shall immediately
institute proceedings against all stockholders to collect unpaid sub-
scriptions to the stock of such corporation, together with the addi-
tional liability of such stockholders equal to the par value of the stock
held by each. All collections made by the receiver shall be held for
the benefit of all creditors, and shall be disbursed in such manner and
at such times as the court may direct. Should the collections made
by the receiver exceed the amount necessary to pay all claims against
such corporation, together with all costs and expenses of the receiver-
ship, the remainder shall be distributed among the stockholders from
whom collections have been made, as the court may direct; and in the
event any stockholder has not paid the amount due from him, the
stockholders making payment shall be entitled to an assignment of

holder in any corporation other than one for railroad, religious or charitable purposes, should be liable for the dues of the

---

any judgment or judgments obtained by the receiver against such stockholder, and may enforce the same to the extent of his proportion of claims paid by them." Gen. Stat. Kans., 1868, ch. 23, § 32, as amended by L. 1898, ch. 10, § 14; *Ib.*, Gen. Stat. 1901, par. 1302.

"The stockholders of every corporation, except railroad corporations or corporations for religious or charitable purposes, shall be liable to the creditors thereof for any unpaid subscriptions, and in addition thereto for an amount equal to the par value of the stock owned by them, such liability to be considered an asset of the corporation in the event of insolvency, and to be collected by a receiver for the benefit of all creditors." Gen. Stat. Kans., 1868, ch. 23, § 46, as amended in 1898, ch. 10, § 15.

When the defendants acquired their stock the statute that governed the transfer of stock in corporations was as follows:

"The stock of any corporation created under this act shall be deemed personal estate, and *shall be transferable only on the books of the corporation, in such manner as the by-laws may prescribe;* and no person shall, at any election, be entitled to vote on any stock, unless the same shall have been standing in the name of the person so claiming to vote, upon the books of the corporation, at least thirty days prior to such election; but no shares shall be transferred until all previous assessments thereon shall be fully paid." Gen. Stat. Kans., 1868, ch. 23, § 27, as amended by Laws 1879, ch. 88, § 1; *Ib.*, 1889, par. 1184.

The above statute which was in force on and after January 11th, 1899:

"   .   .   .   It shall also be the duty of the president and secretary of any such corporation, *as soon as any transfer, sale or change of ownership of any such stock is made as shown upon the books of the company, to at once file with the Secretary of State a statement of the new stockholder or stockholders, the number of shares so transferred, and the par value and the amount paid on such stock. No transfer of such stock shall be legal or binding until such statement is made as provided for in this act:* provided, however that no transfers of stock shall release the party so transferring from the liability of the laws of this State as to stockholders of corporations for profit, for ninety days after such transfer and the filing and recording thereof in the office of the Secretary of State." § 12, Laws of Kansas, Special Session, 1898, p. 33.

corporation to the extent of every unpaid subscription, and for an additional amount equal to the par value of the stock owned by him.  2. That if an execution against a corporation was returned "no property found," then execution could go, on the order of court and after written notice, against any stockholder, to the extent equal in amount to his stock, together with the amount, if any, unpaid thereon.  3. That when a corporation became insolvent a receiver could be appointed on application to the proper court to close its affairs; and it was made the duty of such receiver to immediately institute proceedings against all stockholders to collect unpaid subscriptions, together with the additional liability of such stockholders equal to the par value of the stock held by each; all such collections to be for the benefit of creditors. 4. That the stock of the corporation should be transferable only *on the books of the corporation* in such manner as the law prescribed.

By an act passed in 1899, and which went into effect January 11th, 1899, *before* the defendants sold their stock, the previous statute (Gen. Stat. 1868, c. 23, § 24) was so amended as to make it the duty of the president and secretary or the managing officer of each corporation for profit doing business in the State (other than banking, insurance and railroad corporations) as soon as any transfer, sale or change of ownership of stock is made, as shown on its books, "to at once *file with the Secretary of State* a statement of such change of ownership, giving the name and address of the new stockholder or stockholders, the number of shares so transferred, and the par value and the amount paid on such stock."  The same statute provided that "no transfer of such stock shall be legal or binding until such statement is made as provided."  Laws of Kans. Special Sess. 1898, c. 10, § 12, p. 33.  It is not claimed that the above statement had been made or filed with the company prior to the sale by the defendants of their stock, or that it was ever filed, and the result is that the transfer made by the defendants of their stock (although the

fact of such transfer may have been shown on the books of
the Wire Company) was not legal or binding, if the statute
was valid.

· But the defendants insist that as the statutes of Kansas
did not, at the time they acquired their stock, require as a
condition of its legal or binding transfer that a statement of
such transfer should be filed with the Secretary of State, by
the president, secretary or managing officer of the corpora-
tion, the subsequent statute imposing a condition of that
kind impaired the obligation of the contract under which
stockholders acquired their stock in violation of the Constitu-
tion of the United States. The Supreme Court of Kansas re-
jected this view and they were right.

In what way the transfer of the stock of a corporation shall
be made and evidenced is a matter entirely within the gov-
ernmental power of the State that creates the corporation,
the State taking care that such power be not so exerted as to
violate any right secured by the Supreme Law of the Land. ·
It was never contemplated by the framers of the Constitution
that the national authorities should supervise the action of a
State upon such a subject, so long as the State did not trans-
gress that instrument but kept within the limits of its reserved
power to enact such reasonable laws or regulations as, in its
judgment, were necessary or conducive to the general good.
We can well understand how the State might have concluded
that the statutory requirement in force when the defendants
acquired their stock, to the effect that transfers of the stock
of corporations created by the State (except certain corpo-
rations) should be transferable only on the books of the cor-
poration, was not effective or sufficient; particularly, because
such books might not be easily or at all accessible. And we
can also well understand how the State might have reasonably
concluded, in the interest of the public, particularly of pur-
chasers of stock, and of stockholders as well, that the evi-
dence of such transfers should appear from the records of
some public office, like that of the Secretary of State. Hence, ·

perhaps, the enactment of the statute which went into effect
January 11, 1899. Such a requirement as that in the act of
1899 did not increase, in any degree whatever, the liability
of stockholders, as agreed to by them when becoming stock-
holders. On the contrary, it was in the interest of stock-
holders as determining the fact of their ceasing to be stock-
holders on and after a particular date. Further, the statute
did not forbid a sale of the stock upon such terms as might
be agreed upon between a stockholder and any purchaser,
the transfer, pursuant to such sale, being evidenced as pre-
scribed by the statute. Nor, if sued as stockholders, did the
act deprive defendants of any valid defense which they were
entitled to make at the time they acquired their stock. It
did nothing more than to prescribe, presumably in the in-
terest of the parties immediately concerned and of the pub-
lic, a rule under which a person, owning and selling his stock
in a corporation, should be regarded as a stockholder, unless
and until its sale and transfer were manifested by a statement
of a particular kind filed in a named public office. If it be
said that the officers, charged with the duty of making and
filing that statement, might fail or refuse to discharge the
duty imposed upon them, the answer is, that if injury thereby
came to the stockholder, those officers would be liable to him
for such injury arising from neglect of duty. Besides, those
officers could be compelled by proper proceedings to perform
the duty put upon them by the statute. We hold that the
defendants acquired their stock subject, necessarily, to the
power of the State, having due regard to the legal rights of
parties, to regulate the transfer of stocks in its own corpora-
tions. In its first opinion in this case the Supreme Court of
Kansas well said (p. 735): "Before the act [of 1899] was
passed one who had sold stock of a corporation, in order to
relieve himself from liability for its debts, was obliged to see
that the transfer was noted by its officer upon its books; the
enactment merely imposed an additional duty to see that a
similar notation was made upon a public record. The change

imposed no restraint upon the transfer of the stock, but related only to the means by which it should be accomplished and the manner in which it might be evidenced. It is essentially a matter of method—of procedure—rather than of ultimate substantial rights."

Equally without merit is the contention that the statute of 1899 impaired the obligations of the stockholders' contract, in that it substituted for individual actions against them a suit in equity by a receiver appointed after judgment against the corporation. In becoming stockholders the defendants did not acquire a vested right in any particular mode of procedure adopted for the purpose of enforcing their liability as stockholders. It is a well-established doctrine that mere methods of procedure in actions on contract that do not affect the substantial rights of parties are always within the control of the State. It is to be assumed that parties make their contracts with reference to the existence of such power in the State.

Without expressing any opinion as to questions of a local character, we hold, for the reasons stated, that the statute of 1899 furnishes no valid basis for the contention that it impaired the obligation of the contract by which defendants acquired their stock. This is the only Federal question of a substantial character presented on this writ of error, and the judgment of the Supreme Court of Kansas must be affirmed.

*It is so ordered.*