PAUL LAPP AND MAURICE LAUCHER, AS EXECUTORS AND TRUSTEES OF THE ESTATE OF ROSE EMMENECKER, DECEASED, PLAINTIFFS-APPELLANTS, v. ANNA BELVEDERE AND SALVATORE BELVEDERE, HER HUSBAND, DEFENDANTS-RESPONDENTS.

Argued February 10, 1936—Decided May 14, 1936.

564

For the appellants, *Joseph L. Freiman.*

For the respondents, *Louis Struhl.*

The opinion of the court was delivered by

HEHER, J. The question for decision is whether chapter 231 of the laws of 1932 (*Pamph. L.,* 509), providing that no action shall be instituted against any person answerable on a bond secured by a real estate mortgage, unless such party shall have been joined in the proceeding to foreclose the mortgage, contravenes article I, section 10, paragraph 1, of the federal constitution, enjoining the states from passing any law impairing the obligation of contracts, and article IV, section 7, paragraph 3, of the state constitution, imposing a like prohibition upon the legislature, and, more specifically, securing against legislative deprivation "any remedy for enforcing a contract which existed when the contract was made." Chapter 82 of the laws of 1933 (*Pamph. L., p.* 172) has a like provision.

The insistence is that the statute, in providing for the joinder in the foreclosure proceedings of a person liable on a pre-existing bond as a *sine qua non* to action later on against such party on that obligation, is, in effect, "a post-

ponement of the appellants' remedy," and is therefore obnoxious to the constitutional provisions referred to. The specific vice of the statute, it is said, is that it "requires additional subpœnas to be issued and served, * * * additional litigation, and the possibility of delay," especially where service can be effected only by publication, and therefore it confers "a substantial advantage" upon the obligor, and places "an additional burden upon appellant in the enforcement of his bond, and to that extent deprives him of the less burdensome remedy that existed for the enforcement of his contract at the time it was made." Appellant relies upon *Baldwin* v. *Flagg,* 43 *N. J. L.* 495; *Vanderbilt* v. *Brunton Piano Co.,* 111 *Id.* 596; *Datz* v. *Barry,* 115 *N. J. Eq.* 84. It is pointed out that in the case first cited the holding was that the enlargement of the time for the performance of an existing contract "for a definite or indefinite period, *however short,"* constituted an impairment of its obligation. We find nothing of substance in the contention thus made.

Chief Justice Marshall early gave recognition to what he regarded as a fundamental distinction between the obligation of a contract and the remedy for its enforcement. He declared that, "without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct." *Sturges* v. *Crowninshield,* 4 *Wheat.* 122, 200; 4 *L. Ed.* 529, 549. See, also, *Hill* v. *Merchants' Mutual Insurance Co.,* 134 *U. S.* 515; 10 *S. Ct.* 589; 33 *L. Ed.* 994. But the line of demarcation is not always clearly defined. The obligation of a contract, in the constitutional sense, refers ordinarily to the means provided by law for its enforcement. If there is a lessening of the efficacy of the means thus provided, there is an unwarranted impairment of the obligation of the contract. Thus legislation which postpones or retards the enforcement of the contract contravenes this constitutional precept. This does not mean that, so far as the interdiction of the federal constitution is concerned, the legislature may not lawfully dispense with a particular mode of proceeding if another remains or is provided which affords an effective and reasonable means of enforcing

the right. The legislature may enlarge, limit or alter the modes of proceeding, and the forms to enforce the contract, provided that it does not deny a remedy, or so embarrass it with conditions or restrictions as seriously to lessen the value of the right. *State of Louisiana, ex rel. Ranger* v. *City of New Orleans,* 102 *U. S.* 203; 26 *L. Ed.* 132; *Walker* v. *Whitehead,* 83 *U. S.* (16 *Wall.*) 314; 21 *L. Ed.* 357; *Bronson* v. *Kinzie,* 42 *U. S.* (1 *How.*) 311; 11 *L. Ed.* 143; *Tennessee, ex rel. Bloomstein* v. *Sneed,* 96 *U. S.* 69; 24 *L. Ed.* 610; *Hourigan* v. *Township of North Bergen,* 113 *N. J. L.* 143; 172 *Atl. Rep.* 193.

The state is possessed of authority to make procedural changes, provided the regulations do not impair the substance of the right. In *Bronson* v. *Kinzie, supra,* Chief Justice Taney laid down the governing principle thus: "If the laws of the state passed afterwards had done nothing more than change the remedy upon contracts of this description, they would be liable to no constitutional objection. For, undoubtedly, a state may regulate at pleasure the modes of proceeding in its courts in relation to past contracts as well as future. It may, for example, shorten the period of time within which claims shall be barred by the statute of limitations. It may, if it thinks proper, direct that the necessary implements of agriculture, or the tools of the mechanic, or articles of necessity in household furniture, shall, like wearing apparel, not be liable to execution on judgments. Regulations of this description have always been considered, in every civilized community, as properly belonging to the remedy, to be exercised or not by every sovereignty, according to its own views of policy and humanity. It must reside in every state to enable it to secure its citizens from unjust and harassing litigation and to protect them in those pursuits which are necessary to the existence and well-being of every community. And, although a new remedy may be deemed less convenient than the old one, and may in some degree render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional. Whatever belongs merely to the remedy may be altered according to the will of the state, pro-

vided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself. In either case it is prohibited by the constitution." See, also, *Bernheimer* v. *Converse,* 206 *U. S.* 516; 51 *L. Ed.* 1163; 27 *S. Ct.* 755; *Ettor* v. *Tacoma,* 228 *U. S.* 148; 57 *L. Ed.* 773; 33 *S. Ct.* 428.

Matters which relate to the remedy, *i. e.,* the course and mode of procedure to enforce or defend a substantive right, are subject to "change and alteration, and even repeal, provided the legislation does not operate to impair a contract or deprive one of a vested property right. If the changing or repealing statute leaves the parties a substantial remedy, the legislature does not exceed its authority." *Ettor* v. *Tacoma, supra;* see, also, *Conley* v. *Barton,* 260 *U. S.* 677; 43 *S. Ct.* 238; 67 *L. Ed.* 456; *Vance* v. *Vance,* 108 *U. S.* 514; 2 *S. Ct.* 854; 27 *L. Ed.* 808; *Curtis* v. *Whitney,* 13 *Wall.* 68; 20 *L. Ed.* 513; *McCracken* v. *Hayward,* 2 *How.* 608; 11 *L. Ed.* 397. There is no substantial impairment of right merely because the new remedy is less convenient or less prompt and speedy than the one abolished. *Ogden* v. *Saunders,* 12 *Wheat.* 213; 6 *L. Ed.* 606; *Beers* v. *Haughton,* 9 *Pet.* 329; 9 *L. Ed.* 145; *Tennessee, ex rel. Bloomstein* v. *Sneed, supra; Waggoner* v. *Flack,* 188 *U. S.* 595; 23 *S. Ct.* 345; 47 *L. Ed.* 609. And a moderate extension of the time for pleading or for trial will ordinarily be a valid exercise of the power reserved to the state to regulate the course and mode of procedure for the enforcement of rights arising from pre-existing contracts. There is a different situation when these extensions go beyond the bounds of reason and "make the remedy a shadow." In fine, the inquiry is whether the challenged statute altered or impaired substantial rights. Does it materially lessen the value of the contract, or substantially abridge or unreasonably delay the enforcement of a right created thereby? Compare *W. B. Worthen Co.* v. *Kavanaugh,* 295 *U. S.* 56; 55 *S. Ct.* 555; 79 *L. Ed.* 1298; 97 *A. L. R.* 904; *Penniman's Case (Vial* v. *Penniman),* 103 *U. S.* 714, 720; 26 *L. Ed.* 602, 605; *Oshkosh Waterworks*

*Co.* v. *Oshkosh,* 187 *U. S.* 437; 23 *S. Ct.* 234; 47 *L. Ed.* 249; *Henley* v. *Myers,* 215 *U. S.* 373, 385; 30 *S. Ct.* 148; 54 *L. Ed.* 240; *National Surety Co.* v. *Architectural Decorating Co.,* 226 *U. S.* 276; 33 *S. Ct.* 17; 57 *L. Ed.* 221; *W. B. Worthen Co.* v. *Thomas,* 292 *U. S.* 426; 54 *S. Ct.* 816; 78 *L. Ed.* 1344; 93 *A. L. R.* 173; *Gunn* v. *Barry,* 15 *Wall.* 610; 21 *L. Ed.* 212; *Edwards* v. *Kearzey,* 96 *U. S.* 595; 24 *L. Ed.* 793; *Fisk* v. *Jefferson,* 116 *U. S.* 131, 134; 6 *S. Ct.* 329; 29 *L. Ed.* 587; *Home Building and Loan Association* v. *Blaisdell,* 290 *U. S.* 398, 430; 54 *S. Ct.* 231; 78 *L. Ed.* 413, 434; *Toffey* v. *Atcheson,* 42 *N. J. Eq.* 182; *Von Hoffman* v. *Quincy,* 4 *Wall.* 535; 18 *L. Ed.* 403; *Barnitz* v. *Beverly,* 163 *U. S.* 118; 16 *S. Ct.* 1042; 41 *L. Ed.* 93.

The express prohibition of the state constitution against legislative deprivation of a remedy for the enforcement of a contract in existence when it was made is peculiar to our organic law. It first appeared in the constitution of 1844, adopted after Chief Justice Taney, in *Bronson* v. *Kinzie, supra,* taking note of the recognized distinction between the obligation of a contract and the remedy for its enforcement, in relation to the federal constitutional inhibition upon the states against the impairment of the obligation of a contract, had declared that it did not extend to a change or alteration of remedy, if thereby the obligation of the contract was not impaired, and that the modification, change or repeal of an existing remedy did not constitute such an impairment, if a substantial or efficacious remedy remained or was given, by means of which the rights created by the contract could be enforced. While this provision apparently puts an added restriction upon the authority of the legislature over remedies for the enforcement of existing contracts, it is not violated unless there has been a material and substantial impairment of the existing remedy. This provision does not deprive the legislature of the power to "make laws which incidentally affect the pursuit of remedies for enforcing existing contracts; as, for instance, such as regulate the admission of evidence, the course of practice in the courts, the mode of conducting sales under judgments and executions, and alter-

ing the forms of action, or prescribing periods for the limitation of actions within a reasonable time." *Rader* v. *Southeasterly Road District of Township of Union,* 36 *N. J. L.* 273. It does not impair the authority of the legislature to alter the form of the remedy, if no substantial right arising from the contract is thereby infringed. *Baldwin* v. *Newark,* 38 *Id.* 158; *Toffey* v. *Atcheson, supra.*

There is, as regards this provision, little or no practical difference between the obligation of a contract and the remedy for its enforcement. If, through the deprivation of a remedy in existence when the contract was made, the efficacy of the means provided for the enforcement of the contract is lessened, the substance and obligation of the contract are impaired. But where a remedy of substantially like character remains, or a substitute means of enforcement of the same species are given, there is no impairment of the substance of the right. There is, in that situation, no lessening of the force, efficiency or value of the obligation. *Rahway* v. *Munday,* 44 *N. J. L.* 395, 414; *Baldwin* v. *Flagg, supra; Vanderbilt* v. *Brunton Piano Co., supra; Newark Savings Institution* v. *Forman,* 33 *N. J. Eq.* 436.

So tested, the statute under review is not repugnant to this constitutional provision. The evident legislative purpose was to afford to the person liable upon the bond, through notice of the proceedings instituted to foreclose the collateral mortgage, timely opportunity to invoke measures for self-protection, particularly in relation to the sale of the security, upon which deficiency liability depends. Manifestly, it was a measure deemed necessary in view of the almost complete paralysis of the real estate market consequent upon the current trade depression. It was essentially procedural in character. It did not impair the substantial means of enforcement in existence when the contract was made. The remedy stands as it was, without limitation or curtailment. The statute does not, to use the language of Mr. Justice Bergen, speaking for this court, in *Pennsylvania Company for the Insurance of Lives* v. *Marcus,* 89 *N. J. L.* 633, "impose a burden or restriction impairing the value or benefit of" the

contract. Nor is there, in the constitutional sense, an enlargement of the time for the payment of the obligation, nor a postponement of the remedy upon it. The possible delay incident to the bringing in of an interested party no more offends this constitutional provision than a moderate extension of the time for pleading or for trial. If this were to be regarded as violative of the constitutional precept, so would an extension of time for pleading or for trial, or for the bringing in of a party inadvertently omitted, and the statutory provisions conferring such judicial power. Statutes of this character are essentially procedural in character; they do not affect the substance of right or remedy.

The cases invoked by appellants do not serve them. In *Baldwin* v. *Flagg, supra,* the holding was that the challenged statute enlarged the time for the payment of the obligation, and "postponed the default" of the obligor "until the remedy on the collateral security of the mortgage is exhausted," and it therefore did not apply to a pre-existing bond, for it not only postponed "the obligee's remedy on his bond until the foreclosure proceedings are terminated, but  *  *  *  also impaired the value of the mortgage security by subjecting the purchaser's title to conditions of redemption after sale, which must diminish the vendible value of the mortgaged premises." And in *Vanderbilt* v. *Brunton Piano Co., supra,* the statute reviewed, chapter 82 of the laws of 1933 (*Pamph. L., p.* 172), permitted proof of the "fair market value" of the mortgaged lands in reduction of the deficiency on the bond, notwithstanding the price yielded by the foreclosure sale; and it was held that, inasmuch as the obligee of the pre-existing bond in suit had, "as an incident to his contract, the right to recover a liquidated sum, first by receiving the proceeds from the sale of the pledged property and supplementarily by a personal action," that statutory provision impaired the obligation of his contract, in that its direct effect was "to provide an opportunity to the debtor for reducing the sum recoverable" upon his contract. It was pointed out that the statute applied whether the sale in the foreclosure proceedings "be to the mortgagee or to a third party,

and   *  *  *  is incapable of dissection so that it may be held to apply in the one instance and not in the other;" that "there is no legal obligation upon a mortgagee either to bid up, or to bid in, the property at the foreclosure sale, and the impairment of his contract is the more obvious when the property is struck off to a third person at a figure less than that subsequetly fixed in the action on the bond as the 'fair market value;'" and that, in such a situation, "the property is gone with no right of redemption" in the mortgagee, and "he is compelled to forfeit a part of the debt which his contract, valid and enforceable when made, gave him; at least, his remedy for enforcing the contract has been taken away."

While this court declared in *Datz* v. *Barry, supra,* decided in 1933, after the enactment of the statute under review, that the obligor of a bond executed prior thereto was "a proper, though not a necessary, party" to the proceedings instituted to foreclose the mortgage given to secure the obligation (citing *Andrews* v. *Stelle,* 22 *N. J. Eq.* 478), the case did not turn upon the constitutionality of the statute. The obligor was a party to the proceedings; and it was therefore immaterial whether he was a proper or a necessary party.

The statute in question was, therefore, a valid exercise of legislative power; and, that being so, the complaint was properly struck out.

Judgment affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ.   13.

*For reversal*—None.